Filed 1/16/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID TOURGEMAN, | D063473 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00097595-CU-BT-CTL) |
| NELSON & KENNARD et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Luis R. Vargas, Judge. Reversed and remanded with directions.

Johnson & Weaver, Frank J. Johnson and Brett Michael Weaver for Plaintiff and Appellant.

Simmonds & Narita, Tomio Buck Narita and Jeffrey A. Topor for Defendants and Respondents.

## I.

## INTRODUCTION

David Tourgeman brought a putative class and representative action against Dell Financial Services, L.P. (Dell Financial Services)[1] and respondents Nelson & Kennard and Robert Kennard. In his complaint, Tourgeman contended that respondents violated the Fair Debt Collections Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.) while attempting to collect a debt that Tourgeman incurred in connection with his purchase of a Dell computer. Tourgeman brought a single claim under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200) seeking an injunction to prevent respondents from engaging in unlawful, unfair, and/or fraudulent debt collection practices in the future. Respondents filed a special motion to strike pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16).[2]

Tourgeman voluntarily dismissed his action against respondents. After the action was dismissed, respondents filed a motion for attorney fees. (Code Civ. Proc., § 425.16, subd. (c)(1).)[3] Tourgeman opposed the motion. In his opposition, Tourgeman conceded that the trial court had jurisdiction to rule on respondents' motion for attorney fees, but

---

[1]    Dell Financial Services is not a party to this appeal.

[2]    Unless otherwise specified, all subsequent statutory references are to the Code of Civil Procedure.
      "SLAPP" stands for Strategic Lawsuit Against Public Participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

[3]    Section 425.16, subdivision (c)(1) provides in relevant part, "[I]n any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."

argued that the trial court was required to determine whether respondents would have prevailed on their special motion to strike as a prerequisite to awarding them attorney fees under the anti-SLAPP statute. Tourgeman further argued that respondents would not have prevailed on their special motion to strike because the action was exempt from the anti-SLAPP statute, under the public interest exception to the statute (§ 425.17).[4]

The trial court determined that Tourgeman had failed to demonstrate that the public interest exception applied to his lawsuit, and entered an order to this effect. The court awarded attorney fees and costs to respondents in the amount of $11,581.[5] The court later entered judgment in favor of respondents in this same amount.

On appeal, Tourgeman contends that the trial court erred in concluding that his action was not subject to the public interest exception (§ 425.17, subd. (b)) to the anti-SLAPP statute. We conclude that Tourgeman's action satisfied each of the requirements of the public interest exception and that his complaint was therefore not subject to a special motion to strike. The trial court thus erred in awarding respondents attorney fees and costs pursuant to the anti-SLAPP statute. Accordingly, we reverse the judgment and

---

[4]    Generally speaking, section 425.17 provides that actions brought in the public interest are not subject to the anti-SLAPP statute if three criteria are met: the plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member; the action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit on the general public or a large class of persons; and private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

[5]    Tourgeman claimed only that his action was exempt from the anti-SLAPP statute pursuant to the public interest exception (§ 425.17), and did not otherwise oppose the special motion to strike.

3

the attorney fees and costs order and remand the matter to the trial court with directions to deny respondents' motion for attorney fees and costs.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Tourgeman's complaint*

In May 2012, Tourgeman filed a complaint against Dell Financial Services and respondents.  In his complaint, Tourgeman alleged that he purchased a Dell computer in November 2001 and that Dell Financial Services had arranged for Tourgeman to obtain a loan from CIT Online Bank.  Tourgeman alleged that in January 2007, Nelson & Kennard "generated [] a collection letter to [Tourgeman] on a form template" that misidentified the original creditor of Tourgeman's loan.  Tourgeman further alleged that Scott Kennard had "spent very little time reviewing this letter, and did not review [Tourgeman's] file or account notes, before signing it."  Tourgeman claimed that as a result, Kennard had not been " 'meaningfully involved,' " in connection with the collection of the debt as required by the FDCPA.

Tourgeman further alleged that Nelson & Kennard had "sent collection letters to hundreds of consumers that falsely identified the consumer's original creditor." Tourgeman also alleged that Scott Kennard had not conducted any "meaningful review" before signing these letters.

Tourgeman claimed that Nelson & Kennard had filed a lawsuit against him that misidentified the original creditor of Tourgeman's loan, that he had incurred over $38,000 in legal fees defending the lawsuit, and that Nelson & Kennard had eventually dismissed

4

the lawsuit without prejudice. Tourgeman further alleged that Nelson & Kennard had filed "similar false complaints against dozens of consumers throughout California."

Tourgeman stated that he was bringing the action on behalf of himself and the following classes:

> "All consumers who financed a Dell-branded product through Dell Financial Services, Inc. and to whom . . . Nelson & Kennard sent, to an address in California, a collection letter that identified the consumer's original creditor as an entity that was different than the entity with which the consumer actually had a loan agreement. [¶] . . . [¶]

> "All consumers who financed a Dell-branded product through Dell Financial Services, Inc. and against whom Nelson & Kennard filed a California state-court lawsuit that alleged the consumer entered into a written loan agreement with an entity that was not the entity with which the consumer actually had a loan agreement."

Tourgeman alleged a single cause of action against Dell Financial Services and respondents for violation of the UCL on behalf of himself, "members of the [c]lass, and of the general public." Tourgeman claimed that respondents continued to send collection letters and file collection lawsuits without "enact[ing] measures to ensure that they obtain complete and accurate information about consumers before sending out collection letters and/or filing suits."

In his prayer for relief Tourgeman sought:

> "An injunction enjoining, preliminarily and permanently, the [respondents] from continuing the unfair, unlawful, and/or fraudulent conduct alleged herein, including an injunction requiring the [respondents] to enact sufficient measures that will include the name of the correct original creditor on any collection letters they send out or in any lawsuits that they file in the future. [¶] . . . [¶]

5

"An injunction enjoining, preliminarily and permanently, [the respondents] from continuing the unfair, unlawful, and/or fraudulent conduct alleged herein, including an injunction requiring [respondents] to enact policies and procedures to ensure that an attorney is 'meaningfully involved' in the attempt to collect debts by, among other things, conducting a sufficient review of the consumer's file before signing a collection letter."

B.     *Respondents' special motion to strike and motion for attorney fees*

In August 2012, respondents filed a special motion to strike pursuant to the anti-SLAPP statute. Tourgeman subsequently dismissed this action against respondents without prejudice. After the dismissal, respondents filed a motion for attorney fees and costs pursuant to the anti-SLAPP statute.

Tourgeman opposed the motion, contending that respondents were not entitled to an award of attorney fees and costs pursuant to the anti-SLAPP statute because they would not have prevailed on their special motion to strike. Specifically, Tourgeman argued that the action was exempt from application of the anti-SLAPP statute pursuant to the public interest exception (§ 425.17).

In support of his claim that the action was exempt from the anti-SLAPP statute, Tourgeman emphasized that he had not sought "any monetary damages or restitution for himself," and that the sole remedy that he had sought in his complaint was injunctive relief designed to ensure that California consumers were not harmed by respondents' allegedly unfair, unlawful and fraudulent debt collection practices in the future. Tourgeman further argued that he had not sought any benefit for himself and that instead, he had brought this case "purely for the benefit [of] a large class of Californians who might one day wind up on the receiving end of a collections letter or lawsuit from

6

[respondents] that violates the FDCPA." Tourgeman also argued that his action would benefit the public interest, and that private enforcement was necessary and placed a disproportionate burden on him.

Respondents filed a reply in which they argued that Tourgeman's action did not meet the three requirements of the public interest exception to the anti-SLAPP statute (§ 425.17). With respect to the first prong, i.e., that the plaintiff have sought no greater or different relief than that sought for the general public or class, respondents contended that in a related federal action, "Tourgeman sought relief personal to himself, different from and far greater than the injunctive relief he sought on behalf of the class" in this action. With respect to the second prong, i.e., that the action would enforce an important right affecting the public interest, respondents argued that Tourgeman had "provided argument, but no evidence." Specifically, respondents contended that Tourgeman had failed to present evidence as to how many of its collection letters and lawsuits had misidentified the consumer's original creditor. Finally, with respect to the third prong, i.e., that private enforcement was necessary and placed a disproportionate burden on the plaintiff, respondents argued that the Federal Trade Commission and Consumer Financial Protection Bureau were authorized to enforce compliance with the FDCPA, and that they had done so in several recent cases. Respondents further argued than "Tourgeman has failed to present any evidence of the financial burden this litigation would impose on him relative to his stake in the matter."

7

C.    *The trial court's ruling*

On November 16, 2012, the trial court entered an order granting respondents' motion for attorney fees and costs.  The court concluded that Tourgeman's action did not come within the public interest exception to the anti-SLAPP statute, reasoning:

> "Plaintiff's complaint in this action sought only injunctive relief, and it is unlikely Plaintiff would have benefitted from the requested injunction.  However, Plaintiff has not shown an important public interest that affected a large group of persons would have been vindicated by his complaint or that private enforcement was necessary and placed any financial burden on Plaintiff greater than his stake in this action."

The court noted that Tourgeman had not otherwise opposed the anti-SLAPP motion:

> "Plaintiff does not dispute his sole claim for violation of Business and Professions Code section 17200 arose from the [respondents'] exercise of their constitutional right to petition.  Plaintiff also does not attempt to demonstrate he could meet his burden of establishing a probability of prevailing on the merits of his section 17200 claim."

The court awarded respondents attorney fees and costs pursuant to section 425.16, subdivision (c)(1) in the amount of $11,581.02.  On December 26, the trial court entered a judgment in favor of respondents against Tourgeman for $11,581.02.

8

D.    *The appeal*

Tourgeman timely appeals.[6]

## III.

## DISCUSSION

*The trial court erred in awarding respondents attorney fees
and costs pursuant to section 425.16, subdivision (c)(1)*

Tourgeman contends that the trial court erred in awarding respondents attorney fees and costs pursuant to section 425.16, subdivision (c)(1).

A.    *Respondents' contention that we may affirm the attorney fees and costs award
regardless of whether the public interest exception applies is unpersuasive*

Citing *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94 (*Coltrain*), respondents contend that we may affirm the trial court's attorney fees and costs order on the ground that they realized their objectives in the litigation, irrespective of whether they would have prevailed on their special motion to strike.

---

6    On January 15, 2013, Tourgeman filed a notice of appeal purporting to appeal from the November 16, 2012 attorney fee order.  The trial court's November 16 prejudgment attorney fee order was not appealable as an order granting or denying a special motion to strike.  (Cf. §§ 425.16, subd. (i), 904.1, subd. (a)(13) [both providing that an order granting or denying a special motion to strike under § 425.16 is appealable].)  However, a notice of appeal is to be construed liberally, in favor of its sufficiency.  (See, e.g., *In re Z.A.* (2012) 207 Cal.App.4th 1401, 1404, fn. 2.)  Accordingly, we construe Tourgeman's notice of appeal as perfecting a timely appeal from the December 26, 2012 judgment.  Further, the propriety of the November 16 order is subject to review on appeal from the December 26 judgment.  (See, e.g., *Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1544 [interim orders are reviewable on appeal from a final judgment].)

9

In *Coltrain*, a panel of the Fourth Appellate District, Division Two,[7] concluded that when a plaintiff voluntary dismisses its complaint while a special motion to strike is pending, it is within the trial court's "*discretion* to determine whether the defendant is the prevailing party for purposes of attorney's fees under . . . section 425.16, subdivision (c)," and that "[i]n making that determination, the critical issue is which party *realized its objectives in the litigation*." (*Coltrain, supra*, 66 Cal.App.4th at p. 107, italics added.) The *Coltrain* court added, "Since the defendant's goal is to make the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant." (*Ibid*.)

Numerous courts have agreed with the *Coltrain* court's conclusion that a trial court retains jurisdiction to award attorney fees pursuant to section 425.16, subdivision (c)(1) after a plaintiff voluntary dismisses its complaint while a special motion to strike is pending. (See. e.g, *Liu v. Moore* (1999) 69 Cal.App.4th 745, 752 (*Liu*); *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 217 (*Pfeiffer*); *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 879.) However, in contrast to the *Coltrain* court's statement that it is within the trial court's *discretion* to award attorney fees pursuant to section 425.16, subdivision (c)(1) if the court determines that the defendant

7      Throughout their brief, respondents repeatedly state that *Coltrain* is a decision of "[t]his court."  As noted in the text, *Coltrain* was decided by a panel of a different division of this appellate district.  In any event, even if *Coltrain* had been decided by a panel of *this* division, we would be free to disagree with it.  (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 21 ["A Court of Appeal panel is free to disagree with a decision by another panel, division, or district, and may even reconsider its own prior decisions"].)

achieved its *objectives in the litigation*, other courts have concluded that, "Under the terms of subdivision (c), the critical issue is the *merits of the defendant's motion to strike*." (*Liu, supra*, at p. 752, italics added; *Pfeiffer, supra,* at p. 218 [stating that "[t]he fee motion is wholly dependent upon a determination of the merits of the SLAPP motion," and that "the trial court is required to rule on the merits of the [SLAPP] motion"]; accord *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 919 ["the trial court's adjudication of the merits of the section 425.16 motion supports affirmance of the award of attorney's fees and costs to defendant"].)

Thus, under *Liu* and other cases that have adopted its reasoning, "the trial court's adjudication of the merits of a defendant's motion to strike is an essential predicate to ruling on the defendant's request for an award of fees and costs." (*Liu, supra,* 69 Cal.App.4th at p. 752; see also *ibid*. [disagreeing with *Coltrain* to the extent that it permits an award of attorney fees and costs " 'regardless of whether the action is a SLAPP suit or not,' " quoting *Coltrain, supra*, 66 Cal.App.4th at p. 107]; accord *Pfeiffer, supra,* 101 Cal.App.4th at p. 218 ["the statement in *Coltrain*[*, supra*, at page 107], that 'the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under Code of Civil Procedure section 425.16, subdivision (c),' is not accurate"].)

We agree with the *Liu* court and disagree with *Coltrain* to the extent that *Coltrain* permits the trial court to award attorney fees and costs pursuant to section 425.16, subdivision (c)(1) *without* first determining whether the defendant would have prevailed on the special motion to strike. Subject to exceptions not applicable here, section 425.16,

11

subdivision (c)(1) authorizes an award of attorney fees and costs to a "prevailing defendant *on a special motion to strike*." (Italics added.) Thus, a determination of whether a defendant would have prevailed on its motion to strike is an essential prerequisite to an award of attorney fees and costs pursuant to section 425.16, subdivision (c)(1). (*Liu, supra*, 69 Cal.App.4th at p. 752; *Pfeiffer, supra,* 101 Cal.App.4th at p. 218.)

Accordingly, we conclude that we may not affirm the trial court's award of attorney fees and costs on the alternative ground that the trial court had discretion to determine that respondents were the prevailing party under section 425.16, subdivision (c)(1), without determining whether respondents would have prevailed on their anti-SLAPP motion.[8]

B.    *Tourgeman's action was not subject to a special motion to strike because it was protected by the public interest exception to the anti-SLAPP statute*

Tourgeman claims that his action was not subject to a special motion to strike because it was protected by the public interest exception to the anti-SLAPP statute (§ 425.17, subd. (b)).[9] We apply the de novo standard of review to Tourgeman's claim.

---

[8]    In this case, the trial court concluded that Tourgeman's Business and Professions section 17200 claim arose from protected activity, and that Tourgeman had failed to demonstrate a probability of prevailing on that cause of action. The court further concluded that Tourgeman's action was not protected by the public interest exception to the anti-SLAPP statute. We conclude in part III.B., *post*, that the trial court erred in concluding that the action was not protected by the public interest exception to the anti-SLAPP statute. Because the action falls within the exception, it is immaterial whether the action arises from protected activity or whether Tourgeman would have prevailed on his cause of action.

[9]    Respondents' brief contains a single sentence that Tourgeman forfeited his contention that his complaint was protected by the public interest exception (§ 425.17,

12

(See *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 498 (*Strathmann*).)

    1.    *Section 425.17*

Section 425.17, subdivision (b) provides:

> "(b) Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:

> "(1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member.  A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.

> "(2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

> "(3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

In *Club Members For An Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 316 (*Club Members*), the Supreme Court explained that "[i]n 2003, the Legislature

---

subd. (b)).  However, it is the respondents who have forfeited this appellate contention by failing to raise it under a separate heading.  (See, e.g., *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 294 ["Because this argument is not presented under a separate heading, it is forfeited"].)

    In any event, respondents' argument is meritless.  For the reasons stated in part III.A., *ante*, the trial court was required to determine whether respondents would have prevailed on their special motion to strike before it could award respondents attorney fees pursuant to section 425.16, subdivision (c)(1).  Thus, Tourgeman timely raised his claim by arguing in opposition to respondents' motion for attorney fees that respondents would not have prevailed on their special motion to strike because his complaint was subject to the public interest exception.

enacted section 425.17 to curb the 'disturbing abuse' of the anti-SLAPP statute. (§ 425.17, subd. (a).)" "According to the sponsor of . . . section 425.17, Senator Sheila Kuehl, the same types of businesses who used the SLAPP action were inappropriately using the anti-SLAPP motion against their public-interest adversaries. Hence, the Legislature expressly designed subdivision (b) of section 425.17 to prevent the use of the anti-SLAPP device against 'specified *public interest actions*,' among others. [Citation.]" (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 913 (*Blanchard*).)

The court in *Ingels v. Westwood One Broadcasting Services, Inc.* (2005) 129 Cal.App.4th 1050, 1066 (*Ingels*), summarized section 425.17, subdivision (b) and the Legislature's intent in enacting that provision as follows:

> "On its face, subdivision (b) appears to exempt class actions and private attorney general suits from treatment under section 425.16.[10] A review of the legislative history confirms that was the intent of the Legislature. . . . '[Senate Bill No.] 515[11] would make the SLAPP motion inapplicable to public interest and class action lawsuits "brought solely in the public interest or on behalf of the general public" when three specified conditions are met. In general, the qualifying language would clearly encompass claims brought under the Unfair Competition Law (Business and Professions Code Section 17200 et. seq.), the Unfair Practices Act (Business and Professions Code Section 17500 et. seq.), the Consumer Legal Remedies Act (Civil Code Section 1750 et. seq.), as well as any other public interest or class actions lawsuits where the three specified conditions are met.' (Sen. Com. on Judiciary, Analysis of

---

10    "However, 'not all public interest or class actions [are intended to be] automatically exempt from the anti-SLAPP law.' [Citation.] Three [statutory] conditions must exist to invoke the protections of subdivision (b) of . . . section 425.17." (*Blanchard, supra*, 123 Cal.App.4th at pp. 913-914.)

11    (Sen. Bill No. 515 (2003–2004 Reg. Sess.).)

Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended May 1, 2003, p. 13; see also Assem. Com. on Judiciary, Rep. On Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended June 27, 2003, p. 11.)"

"The three conditions of . . . section 425.17, subdivision (b)(1) through (3) mirror the three elements for determining the eligibility for a fee award under the private attorney general doctrine as codified in section 1021.5. "[12] (*Blanchard, supra*, 123 Cal.App.4th at p. 914.)

If a plaintiff's lawsuit comes within section 425.17, subdivision (b), it is exempt from the anti-SLAPP statute, and thus, a trial court may deny the defendants' special motion to strike without determining whether the plaintiff's causes of action arise from protected activity, and if so, whether the plaintiff has established a probability of prevailing on those causes of action under section 425.16, subdivision (b)(1). (See, e.g., *Strathmann*, *supra*, 210 Cal.App.4th at p. 498; *Northern Cal. Carpenters Regional Council v. Warmington Hercules Associates* (2004) 124 Cal.App.4th 296, 299 (*Carpenters*).)

---

12      Section 1021.5 provides in relevant part:
        "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

2. *Tourgeman's action satisfied each of the requirements of the public interest exception*

a. *Tourgeman's action was brought solely in the public interest*

Section 425.17 applies only to actions brought "solely in the public interest or on behalf of the general public." "[T]he term 'public interest' is used to define suits brought for the public's good or on behalf of the public." (*Club Members, supra,* 45 Cal.4th at p. 318.) The term "solely" as used in section 425.17, subdivision (b) "expressly conveys the Legislative intent that section 425.17[, subdivision] (b) not apply to an action that seeks a more narrow advantage for a particular plaintiff." (*Club Members, supra,* at p. 317.)

To determine whether Tourgeman's lawsuit met those definitions, "we rely on the allegations of the complaint because the public interest exception is a threshold issue based on the nature of the allegations and scope of relief sought in the prayer." (*Strathmann, supra*, 210 Cal.App.4th at p. 499; *Club Members, supra,* 45 Cal.4th at p. 316 ["If a *complaint* satisfies the provisions of the applicable exception, it may not be attacked under the anti-SLAPP statute" (italics added)]; accord *Carpenters, supra*, 124 Cal.App.4th at p. 300 [concluding action was brought solely in the public interest based on allegations of the complaint].)

Tourgeman's putative class and representative action complaint contained a single claim under the UCL (Bus. & Prof. Code, § 17200 et seq.) against respondents for violations of the FDCPA (15 U.S.C. § 1692 et seq.) Tourgeman did not seek damages or restitution on behalf of himself or the class or the general public. Rather, the sole remedy that Tourgeman sought was injunctive relief directed at preventing respondents from

16

engaging in unlawful, unfair, and/or fraudulent debt collection practices in the future. In addition, as the trial court observed, "it is unlikely [Tourgeman] would have benefitted from the requested injunction," since it is doubtful that Tourgeman will again be the subject of respondents' debt collection efforts. In sum, Tourgeman's putative class and representative action was one seeking injunctive relief to benefit the general public in the future by ensuring that respondents comply with state and federal statutory law.

In light of the nature of Tourgeman's claim and the relief that he sought, we conclude that Tourgeman's action was brought "solely in the public interest." (§ 425.17, subd. (b); see *Strathmann*, *supra*, 210 Cal.App.4th at p. 501 ["Section 425.17[, subdivision] (b) was intended to exempt . . . private attorney general actions from the anti-SLAPP statute"]; *Carpenters, supra*, 124 Cal.App.4th at p. 300 [concluding putative class action seeking enforcement of city's prevailing wage policy was brought solely in public interest]; cf. *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 741 ["By preventing 'a failure of justice in our judicial system' [citation], the class action not only benefits the individual litigant but serves the public interest in the enforcement of legal rights and statutory sanctions"].)

> b. *The trial court properly determined that Tourgeman did not seek relief greater than or different from the relief sought for the general public*

Respondents contend that the trial court erred in concluding that Tourgeman did not seek relief greater than or different from the relief he sought for the general public. Respondents do not dispute that Tourgeman's complaint did not seek any relief *in this action* different from that which he sought for the general public. Rather, respondents

17

contend that "*in his federal court lawsuit*, Tourgeman sought relief personal to himself, different from and far greater than the injunctive relief he sought on behalf of the class." (Italics added.) However, the plain language of section 425.17, subdivision (b) states that the exception applies to "any *action*" as to which certain conditions exist. (Italics added.) Subdivisions (b) and (c) of section 425.17 expressly state that they apply to "the action," and "the matter"; there is no language in *any* of the provisions of section 425.17 that suggests that a court may consider relief sought by the plaintiff in *other* lawsuits between the parties in determining whether an "action" (§ 425.17, subd. (b)) is subject to the public interest exception. Further, respondents fail to cite any authority, or to make any textual argument, in support of their contention that we may consider Tourgeman's *federal* action in considering whether *this* action is subject to the public interest exception.

Accordingly, we conclude that Tourgeman did not seek any relief greater than or different from the relief that he sought for the general public. (§ 425.17, subd. (b)(1).)

      c.    *Tourgeman's action, if successful, would enforce an important right affecting the public interest and would confer a significant benefit of the general public*

As noted above, Tourgeman's complaint alleged that respondents violated the FDCPA (15 U.S.C. § 1692 et seq.), and in so doing committed an unlawful, unfair, or fraudulent business practice under Business and Professions Code section 17200. Specifically, Tourgeman claimed that respondents sent him collection letters and filed an action against him based on a false representation as to the identity of the creditor to whom he purportedly owed a debt. Tourgeman brought his UCL claim on behalf of

18

himself, "members of the Class and members of the general public," and sought an injunction requiring respondents to "enact sufficient measures that will ensure they include the name of the correct original creditor on any collections letters they send out or in any lawsuits that they file in the future."

In enacting the FDCPA, Congress stated that it had found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." (15 U.S.C. § 1692(a).) Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." (15 U.S.C. § 1692(e).) The FDCPA attempts to achieve this purpose through provisions regulating the practices of debt collectors. (See 15 U.S.C. § 1692 et seq.) Federal courts have concluded that a false representation as to a creditor's name may constitute a violation of the FDCPA. (See *Wallace v. Washington Mut. Bank, F.A.* (6th Cir. 2012) 683 F.3d 323, 327 ["District courts have decided, and we agree, that a clearly false representation of the creditor's name may constitute a 'false representation . . . to collect or attempt to collect any debt' under [15 U.S.C.] Section 1692e"].) In his lawsuit, Tourgeman seeks to enjoin respondents from continuing to violate a federal law enacted to protect the general public from abusive debt collection practices. We therefore conclude that Tourgeman's action, if successful, would enforce an important right affecting the public interest and would confer a significant benefit on the general public.

19

Respondents' arguments to the contrary are unpersuasive. Respondents do not dispute that the FDCPA provides important rights to the general public, or that Tourgeman's complaint sought to further the public policy goals of the FDCPA. Rather, respondents contend, as they did in the trial court, that Tourgeman failed to present *evidence* that his action, if successful, would benefit the public. Specifically, respondents contend that Tourgeman failed to present "*evidence* of how many of [respondents'] letters or lawsuits allegedly misidentified the original creditor or otherwise ran afoul of the law." (Italics added.)

Respondents' suggestion, unsupported by any authority, that Tourgeman was required to make an *evidentiary* showing in order to establish this prong of the public interest exception, is unpersuasive. Whether Tourgeman's action would benefit the public is determined by examining his complaint to determine whether his lawsuit is of the kind that seeks to vindicate public policy goals. (*Strathmann, supra*, 210 Cal.App.4th at p. 499 ["the public interest exception is a threshold issue based on the nature of the allegations and scope of relief sought in the prayer"]; see, e.g, *id.* at p. 504 [concluding public benefit requirement of section 425.17, subdivision (b)(2) met where qui tam action sought to further objectives of Insurance Frauds Prevention Act (Ins. Code, § 1871 et. seq.)]; *Carpenters, supra*, 124 Cal.App.4th at pp. 300-301 [concluding that action that sought to promote objectives of city's prevailing wage policy met public benefit requirement of § 425.17, subd. (b)(2)].) As we concluded above, Tourgeman's *complaint* is of the type that seeks to vindicate public policy goals embodied in federal statutory

20

law.  Tourgeman was not required to present *evidence* demonstrating that his action would in fact serve these goals.

In a related argument, respondents contend that Tourgeman failed to demonstrate that this action would benefit the public because a federal court rejected related claims *on the merits*.  Section 425.17, subdivision (b)(2) states that a court is to assume that the challenged action will be successful in considering whether the action benefits the public.  (*Ibid.* ["The action, *if successful*, would enforce an important right affecting the public interest, and would confer a significant benefit . . . on the general public or a large class of persons" (italics added)].)  The merits of Tourgeman's claim are thus irrelevant in determining whether the action meets the public benefit requirement of section 425.17, subdivision (b)(2).

> d.    *Private enforcement was necessary and placed a disproportionate financial burden on Tourgeman in relation to his stake in the matter*

> i.    *The necessity of private enforcement*

" '[C]ongress chose a "private attorney general" approach to assume enforcement of the FDCPA' [citation]."  (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1003.)  Our Legislature also has authorized private attorney general actions with respect to the enforcement of the UCL (Bus. & Prof. Code, § 17200 et seq.).  (See *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 691 ["a claim for injunctive relief under . . . Business and Professions Code section 17200 et seq. is brought by a plaintiff acting in the capacity as a private attorney general"].)  Thus, concluding that Tourgeman's action is within the ambit of the public

21

interest exemption is fully consistent both with Congress's intent in enacting FDCPA and the Legislature's intent in enacting the UCL and section 425.17. (See *Ingels, supra,* 129 Cal.App.4th at p.1066 ["the qualifying language would clearly encompass claims brought under the Unfair Competition Law (Business and Professions Code section 17200 et seq.)," quoting the legislative history of § 425.17].)

It is undisputed that no public entity has sought to enforce the rights that Tourgeman sought to vindicate in his lawsuit. Under these circumstances, we conclude that private enforcement was necessary to enforce the right at issue in Tourgeman's action. (See *Strathmann, supra*, 210 Cal.App.4th at p. 504 ["In this case, private enforcement is necessary because neither the Attorney General nor the Insurance Commissioner has intervened to prosecute the action"]; *Carpenters, supra*, 124 Cal.App.4th at p. 301 [concluding "private enforcement action is necessary '[b]ecause the City of Hercules has failed to take any action to enforce the City's Wage Policy on the Project' "].)

Respondents contend that the Federal Trade Commission is authorized to enforce compliance with the FDCPA and that the "Consumer Financial Protection Bureau [is] beginning to take an active role in FDCPA enforcement." However, as the cases cited above make clear, the *possibility* that a public entity might bring a lawsuit to vindicate certain rights does not demonstrate that a private plaintiff's action to vindicate such rights was not necessary where, as here, the public entity has not filed such a lawsuit. (See,

e.g., *Strathmann, supra*, 210 Cal.App.4th at p. 504; *Carpenters, supra*, 124 Cal.App.4th at p. 301.)[13]

### ii. *Disproportionate financial burden*

In *Blanchard, supra*, 123 Cal.App.4th at pages 915-916, in discussing the law to be applied in considering whether a plaintiff has demonstrated that private enforcement placed a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter, (§ 425.17, subd. (b)(3)), the Court of Appeal stated the following:

> "It has been said about this element that 'the less direct or concrete a personal interest someone has, the more likely he or she will satisfy the element . . . .' [Citation.]" . . . [¶] Courts first focus on what sort of financial stake the plaintiff had in the outcome [citation], i.e., what the plaintiff hoped to gain financially from the litigation in comparison to what it cost. [Citation] . . . The relevant inquiry is whether 'the " 'cost of the [plaintiffs'] legal victory transcends [their] personal interest.' " ' [Citation.]"[14]

---

13    Respondents contend that Tourgeman "completely ignored this factor" in the trial court, and thus failed to carry his burden of demonstrating its applicability. While Tourgeman's trial brief could have been clearer with respect to this issue, his brief contained a section in which Tourgeman contended that he had demonstrated the "necessity-and-financial burden factor," and discussed several cases considering this factor. Further, Tourgeman maintained that his action was necessary in that it "could have very well protected a future class of consumers who one day found themselves on the receiving end of a collection letter or lawsuit from [respondents]." Accordingly, we reject respondents' contention that Tourgeman failed to demonstrate that private enforcement was necessary.

14    The case law to which the *Blanchard* court was referring discussed a similar requirement contained in the private attorney general statute (§ 1021.5.) The *Blanchard* court noted that section 425.17 was modeled, in part, on section 1021.5. (See *Blanchard, supra*, 123 Cal.App.4th at p. 914 ["The Legislature 'sharply defined' the public-interest exception of subdivision (b) of section 425.17 by reference to the three 'factors corresponding to the state's private attorney general statute' so that subdivision (b) 'parallels the existing exception for actions by the attorney general and public

In this case, as discussed above, Tourgeman did not seek *any* financial benefit from the lawsuit, and, as the trial court noted, it is unlikely that Tourgeman would have benefitted from any potential injunctive relief, since it is doubtful that he will again be the subject of respondents' debt collection efforts. This fact, alone, supports the conclusion that the financial burden on Tourgeman is disproportionate to his stake in the action. (See *Carpenters, supra*, 124 Cal.App.4th at p. 301 [concluding the "financial burden on the Plaintiffs is disproportionate to their stake in the action" because plaintiffs "bring the action to vindicate a public interest relating to enforcement of the Prevailing Wage Policy but do not themselves belong to the under-compensated class of nonunion workers"]; compare with *Blanchard, supra*, 123 Cal.App.4th at p. 916 [concluding plaintiffs were unable to demonstrate disproportionate financial burden element because "Plaintiffs seek an accounting to them and restitution to them of moneys they paid to DIRECTV"].)

Further, Tourgeman could reasonably have expected to incur significant litigation costs in attempting to prove that respondents violated the FDCPA and that injunctive relief was an appropriate remedy to deter future violations.[15] Tourgeman also could

---

prosecutors.' (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 515, *supra*, as amended June 27, 2003, pp. 11–12.)"

15    We reject respondents' contention that Tourgeman would not face "any expense to litigate this case" because he was being represented on a contingent-fee basis. As noted previously (see fn. 14, *ante*), section 425.17 was modeled on the private attorney general fee statute (§ 1021.5), and both statutes contain a factor considering the "financial burden" (§§ 425.17, 1021.5) of private enforcement. Under section 1021.5, "the fact that the case was pursued on a contingency fee basis [does not] undercut a plaintiff's attorney fees claim . . . . [Citations.].)" (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th

24

reasonably have anticipated that he might be found liable for an adverse award of costs. (*See Strathmann, supra*, 210 Cal.App.4th at p. 505 [concluding that plaintiff may demonstrate that a lawsuit places a disproportionate burden on him because of the possibility that he may become subject to an attorney fees and costs award].)

In arguing to the contrary, Respondents again contend, without citation to authority, that Tourgeman was required to make an evidentiary showing in order to establish this prong, arguing that Tourgeman failed to "submit any *evidence* of the financial burden this litigation would have imposed on him relative to his stake in the matter." (Italics added.) We reject this argument. As discussed previously, the applicability of the public interest exception is determined by examining the *complaint*. (See, e.g., *Strathmann, supra*, 210 Cal.App.4th at p. 499.)

Respondents also argue, contrary to *Strathmann, supra*, 210 Cal.App.4th 487, that a plaintiff's potential liability for an award of attorney fees and costs "is and should be irrelevant" in determining whether an action places a disproportionate financial burden on a plaintiff. We agree with respondents that such risk will not necessarily establish that a plaintiff faced a disproportionate financial burden in litigating the matter. For example, in a case in which the plaintiff seeks to gain significant personal relief, the specter of such

1331, 1351.) On the contrary, it is well established that the existence of a contingency fee arrangement is a fact that may be used to *increase* an attorney fee award under section 1021.5. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 579 ["One of the most common fee enhancers . . . is for contingency risk"].) Since the existence of a contingency arrangement is not considered to lessen the financial burden of private enforcement under section 1021.5, we conclude that an attorney's representation of a plaintiff on a contingency basis does not lessen the financial burden of private enforcement under section 425.17 either.

relief may outweigh the possibility of an adverse award of costs in determining whether the plaintiff faces a disproportionate financial burden. However, we disagree with respondents that the possibility of such an award is irrelevant to a determination of whether an action places a disproportionate financial burden on the plaintiff. Where a plaintiff files a lawsuit in which he stands to gain little or no personal relief, the possibility of an adverse award of costs may outweigh the personal relief that the plaintiff seeks. (See *Blanchard, supra*, 123 Cal.App.4th at p. 914 [relevant inquiry in determining disproportionate financial burden is "what the plaintiff hoped to gain financially from the litigation in comparison to what it cost"].)

Accordingly, given the circumstances discussed above, we conclude that Tourgeman's filing this action placed a disproportionate financial burden on him in relation to his stake in the matter.

e.      *Conclusion*

Because Tourgeman's action satisfied each of the requirements of the public interest exception to the anti-SLAPP statute, we conclude that Tourgeman's action was exempt from application of the anti-SLAPP statute.[16]

---

[16]      In light of our conclusion that Tourgeman established the applicability of the public interest exception to the anti-SLAPP statute, we need not consider respondents' contention that the trial court properly determined that Tourgeman's claim arose from protected petitioning activity and that Tourgeman did not establish a probability of prevailing on the merits of the claim.

C.    *The judgment and order granting respondents' motion for attorney fees and costs must be reversed*

We concluded in part III.A., *ante,* that, prior to awarding respondents attorney fees and costs pursuant to section 425.16, subdivision (c)(1), the trial court was required to determine whether respondents would have prevailed on their special motion to strike. We concluded in part III.B., *ante*, that respondents would not have prevailed on their special motion to strike because Tourgeman's action is exempt from application of the anti-SLAPP statute, under the public interest exception (§ 425.17). Accordingly, the judgment and order granting respondents' motion for attorney fees and costs pursuant to section 425.16, subdivision (c)(1) must be reversed.

IV.

DISPOSITION

The judgment and the trial court's order granting respondents' motion for attorney fees and costs are reversed. The matter is remanded to the trial court with directions to deny respondents' motion for attorney fees and costs. Tourgeman is entitled to costs on appeal.

_____
AARON, J.

WE CONCUR:

_____
McDONALD, Acting P. J.


_____
IRION, J.

27