Filed 11/27/24; Certified for Publication 12/11/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEKSIA LINDSAY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PATENAUDE & FELIX APC et al.,<br><br>    Defendants and Respondents. | D082750<br><br><br><br>(Super. Ct. No. CIVSB2134283) |

APPEAL from a judgment of the Superior Court of San Bernardino County, David S. Cohn, Judge.  Reversed.

Jubilee Legal, Daniel Abraham; Law Office of Monica Hartsock and Monica Hartsock for Plaintiff and Appellant.

Sessions, Israel & Shartle and James K. Schultz for Defendants and Respondents.

Aleksia Lindsay filed an amended class action complaint (the complaint) alleging unfair debt collection practices against Patenaude & Felix, APC (Patenaude) and Transworld Systems Inc. (Transworld).  Relying

on Code of Civil Procedure section 425.16 (the anti-SLAPP law),[1] the trial court struck the complaint.  So doing, it ruled that section 425.17, subdivision (b) (the public interest exception to the anti-SLAPP law) did not exempt the complaint from application of the anti-SLAPP law.  Lindsay contends this was error.  We agree.  Hence we reverse.

## I.
## Background

### A.    Statutory Framework

We begin with a brief introduction to the anti-SLAPP law and the public interest exception to it.

### 1.  The Anti-SLAPP Law

In 1992 the Legislature enacted the anti-SLAPP law to help weed out, in early stages of litigation, meritless causes of action brought primarily to chill plaintiffs' valid exercise of certain constitutional rights.  (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 (*Club Members*); *Exline v. Gillmor* (2021) 67 Cal.App.5th 129, 137 (*Exline*); § 425.16, subd. (a).)  The mechanism it created to achieve this objective has since come to be known as an anti-SLAPP special motion to strike.  (*Club Members*, at p. 315; *Exline*, at p. 137; cf. § 425.16, subd. (a) [authorizing "a special motion to strike"].)

The filing of an anti-SLAPP special motion to strike triggers a two-step process.  (*Club Members, supra,* 45 Cal.4th at p. 315; see also *Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021–1022 (*Geragos*).)  First, the defendant must carry the burden of making a prima facie showing that a cause of action alleged in the complaint arises from an act of that defendant that is "in furtherance of [its] right of petition or free speech under the

---

[1]    All unspecified statutory references are to the Code of Civil Procedure. SLAPP is an acronym for strategic lawsuit against public participation.

United States Constitution or the California Constitution in connection with a public issue" (protected activity). (§ 425.16, subd. (b)(1); see also *Club Members,* at p. 315*; Geragos,* at pp. 1021–1022.) Second, if the defendant succeeds in carrying this burden, then the plaintiff must establish "a probability that [she] will prevail on the claims." (§ 425.16, subd. (b)(1); see also *Club Members*, at p. 315*; Geragos,* at pp. 1021–1022.)

## 2. The Public Interest Exception

In 2003, the Legislature enacted section 425.17 to curb what it referred to as "disturbing abuse" of the anti-SLAPP law. (§ 425.17, subd. (a); accord, *Club Members, supra,* 45 Cal.4th at p. 315.) Section 425.17 introduced exceptions to the anti-SLAPP law. Among them was the public interest exception, set forth in subdivision (b) of section 425.17, which provides that:

> "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision. [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b)(1)–(3).)

With these aspects of the anti-SLAPP law and public interest exception in mind, we now turn to the origins of this case.

### B. Lindsay's Student Loans, Patenaude and Transworld's Collection Practices, and Their Lawsuits Against Lindsay[2]

Some years ago, Lindsay undertook $60,000 in student loans and fell behind on payments. After she defaulted, she received demands for payment on behalf of two entities—NCSLT Trust 2007-1 and NCSLT Trust 2007-2—that claimed to have acquired the loans. When she requested further information, Transworld (acting for the trusts) supplied her with data that was incomplete and inaccurate. Then it directed Patenaude to initiate two debt collection lawsuits against Lindsay.

Unbeknownst to Lindsay at the time, Transworld and Patenaude had an extensive history of engaging in unfair, deceptive, unethical, and abusive loan collection practices. Such practices included: "[f]iling numerous lawsuits without the intent or ability to prove the claims, if contested"; falsifying evidence to support such claims; and engaging in the unauthorized practice of law. Also unbeknownst to Lindsay at that time, conduct of this sort had resulted in the U.S. Consumer Financial Protection Bureau (CFPB), the Connecticut Department of Banking, and the Attorneys General of New York and Massachusetts taking action against Transworld.

After becoming aware of this information, Lindsay requested leave to file a cross-complaint in one or both of the cases that Transworld and Patenaude had initiated against her. But, before the trial court in that case could rule on her request, Transworld and Patenaude caused their lawsuits against her to be dismissed. Then, after the dismissals, "Transworld sent yet another demand for payment for the same alleged debt."

---

[2] Each statement appearing in section I(B) of this opinion is drawn from Lindsay's amended class action complaint. We express no view as to the truth or accuracy of any such statement.

## C. Lindsay's Lawsuit Against Transworld and Patenaude, and the Anti-SLAPP Special Motion to Strike

The same month she received the post-dismissal demand for payment, Lindsay filed a class action complaint naming Patenaude as a defendant. Thereafter, she filed an *amended* class action complaint, naming Transworld as a defendant, too.

In the amended class action complaint, Lindsay alleged at some length the loan collection practices summarized above. She also alleged that such practices constituted violations of Title 15 section 1692, et seq. (the federal Fair Debt Collection Practices Act or FDCPA), of Civil Code section 1788 et seq. (the Rosenthal Fair Debt Collection Practices Act), and of Business & Professions Code section 17200 (the Unfair Competition Law or UCL). On behalf of a putative class of plaintiffs that included herself,[3] she prayed for actual damages, punitive damages, declaratory relief, injunctive relief, statutory penalties, attorneys' fees, and costs.

Transworld responded by filing an anti-SLAPP special motion to strike (the motion) and a demurrer. Patenaude joined, and Lindsay opposed the motion and the demurrer. In her brief in opposition to the motion, Lindsay stated, in keeping with the allegations of the complaint, that:

> "Defendants have no evidence that they own any of the accounts on which they collect, but [they] claim to have purchased these accounts, large portfolios of private student loan debt. If challenged on their right to collect, [they] will quietly dismiss the lawsuit but continue their

---

[3] The plaintiff class that Lindsay alleged consisted of persons as to whom Transworld had engaged Patenaude and others "to communicate . . . directly or indirectly for the purpose of attempting to collect upon a consumer debt on behalf of a[n] NCSLT Trust through debt collection litigation in year [*sic*] prior to the commencement of this action." Lindsay also alleged a defendant class comprised of Patenaude "and those similarly situated." We express no view as to whether the proposed plaintiff class should be certified or as to the propriety of pleading a defendant class.

collection efforts.  [Their] business model depends on flooding state courts with baseless lawsuits and obtaining default judgments, thus perpetrating a fraud on both those they pursue and on the courts."

Then Lindsay presented three arguments in support of her position that the trial court should deny the motion:  First, she argued the trial court "need not reach the anti-SLAPP analysis at all because this action falls squarely within the public interest exception."  Second, she argued that, "[i]f the Court *were* to conduct the anti-SLAPP analysis" (italics added), then the motion would fail because Patenaude and Transworld could not carry their burden of making a prima facie showing that the causes of action alleged in the complaint arose from protected activity.  Third, she argued she had made a sufficient showing that she was likely to prevail on her claims.

Patenaude and Transworld filed a reply in which they responded to each of Lindsay's three arguments.  Then the trial court issued a tentative ruling in which it indicated it was inclined to hold in favor of Patenaude and Transworld on each of the arguments.

At a hearing on the motion, the trial court ordered further briefing. Lindsay responded by filing a supplemental brief in which she "incorporate[d] by reference all [three] of the arguments" she had presented in her opposition brief and elaborated further on one of those arguments—the one that pertained to her probability of prevailing—but not the other two.  Patenaude and Transworld responded by filing a supplemental brief of their own in which they argued (as they had in their reply) that the public interest exception did not apply and that Lindsay had not made a sufficient showing that she was likely to prevail.

Thereafter, the trial court issued a new tentative ruling in which it re-issued its original tentative ruling verbatim and augmented it with additional analysis pertaining to the probability of prevailing.  Then, at a

6

second hearing, the matter was submitted without argument on the new tentative ruling, and the court granted the motion—holding against Lindsay on each of her three arguments.

Lindsay timely appealed.

## II.
## Discussion

Lindsay contends all three of her arguments had merit, and that the trial court erred as to each of them. In addressing this contention, we begin with the court's holding that the public interest exception did not apply. We begin with this holding because it implicates a threshold issue, the resolution of which may moot the other two holdings. (See *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1460 (*Tourgeman*) ["If a plaintiff's lawsuit comes within section 425.17, subdivision (b), it is exempt from the anti-SLAPP statute, and thus, a trial court may deny the defendants' special motion to strike without determining whether the plaintiff's causes of action arise from protected activity, and if so, whether the plaintiff has established a probability of prevailing on those causes of action under section 425.16, subdivision (b)(1)."]; accord, *Exline, supra,* 67 Cal.App.5th at p. 138; *Batis v. Dun & Bradstreet Holdings, Inc.* (9th Cir. 2024) 106 F.4th 932, 936 (*Batis*) ["When assessing a motion to strike brought under the statute, '[b]efore engaging in [the merits] analysis, a court must consider any claims by the plaintiff that a statutory exemption contained in section 425.17 applies' "].)

Addressing this threshold issue of whether the public interest exception exempted the complaint from application of the anti-SLAPP law, we begin with Patenaude and Transworld's lead argument regarding this issue—which is that Lindsay has forfeited her right to argue the issue on appeal.

### A.     Forfeiture

The gravamen of the argument that Lindsay forfeited her right to argue the public interest exception on appeal is that she "*did not address that*

7

*issue* in [the] supplemental briefing" (italics in original) that the trial court ordered at the hearing. In support of this contention, Patenaude and Transworld quote *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 for the proposition that "[a]ppellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and [that] the trial court did not have an opportunity to consider." (*Ibid.*)

But this argument mischaracterizes what occurred below. As revealed *ante*: Lindsay raised the public interest exception in the trial court, Patenaude and Transworld had (and twice availed themselves of) an opportunity to argue against it in the trial court, and the trial court had (and availed itself of) an opportunity to consider it. In fact, it was a principal focus of the trial court's tentative rulings and ensuing order.

The fact that Lindsay's supplemental brief did not restate or augment her arguments with regard to the public interest exception is of no consequence. Simply stated, "[w]e find no merit to [the] suggestion that a party must object to a tentative ruling and reiterate every rejected argument in order to preserve those arguments on appeal." (*Parkford Owners for a Better Community v. Windeshausen* (2022) 81 Cal.App.5th 216, 226 ["reject[ing] . . . contention that [party] . . . forfeited . . . appellate arguments by failing to . . . challenge the trial court's tentative ruling"].)

Having thus disposed of the forfeiture argument, we now turn to the merits of Lindsay's argument that the trial court erred in holding that the public interest exception did not exempt the complaint from application of the anti-SLAPP law.

## B. Applicability of the Public Interest Exception

In assessing the applicability of the public interest exception under the circumstances presented in this case, we begin by briefly summarizing the

trial court's rationale for rejecting Lindsay's argument that the exception applied. Then we perform our own independent analysis, applying the de novo standard of review. (*Geragos, supra,* 88 Cal.App.5th at p. 1020).

### 1. The trial court's analysis

As set forth *ante*, applicability of the public interest analysis to a given action requires that the action have been "brought solely in the public interest or on behalf of the general public" and that each of three conditions be found to exist. (§ 425.17, subd. (b).) In its order, the trial court concluded that each of the three conditions had been met, but that—because the complaint sought damages (among other forms of relief)—the action could not properly be said to have been brought *solely* in the public interest, and thus could not warrant application of the exception. In the words of the trial court: "The other elements [the three conditions] are satisfied;" however, "[b]ecause [Lindsay] seeks actual and punitive damages, the claim was not brought solely in the public interest . . . [and thus] the public interest exception does not apply."

### 2. The Requirement that the Action Have Been Brought Solely in the Public Interest or on Behalf of the General Public

This appeal is not the first time this court has been presented with a case in which we have been called upon to interpret the phrase "solely in the public interest or on behalf of the general public" within the meaning of section 425.17, subdivision (b). *Tourgeman* held that, as used in section 425.17, subdivision (b), " 'the term "public interest" [refers to] . . . suits brought for the public's good or on behalf of the public' " and "[t]he term 'solely' . . . 'expressly conveys the Legislative intent that [the public interest exception] not apply to an action that seeks a more narrow advantage for a particular plaintiff.' " (*Tourgeman, supra,* 222 Cal.App.4th at p. 1460.)

9

"To determine whether [Lindsay]'s lawsuit met those definitions, 'we rely on the allegations of the complaint because the public interest exception is a threshold issue based on the nature of the allegations and scope of relief sought in the prayer.' " (*Tourgeman, supra,* 222 Cal.App.4th at p. 1460.) So doing, we conclude the complaint in this case does not seek an advantage for Lindsay that is "more narrow" (or different in any way) than the advantage it seeks for the putative plaintiff class. Hence it qualifies as an "action brought solely in the public interest or on behalf of the general public" within the meaning of *Tourgeman*[4] and section 425.17, subdivision (b).

Although the trial court was correct in its observation that Lindsay seeks damages, that circumstance in and of itself does not preclude a conclusion that the action was "brought solely in the public interest or on behalf of the general public" within the meaning of section 425.17, subdivision (b). Indeed, "California courts are clear that plaintiffs can still invoke the public interest exemption even if their lawsuit seeks monetary relief." (*Batis, supra,* 106 F.4th at p. 936 [finding that the public interest exception exempted action from the anti-SLAPP law, despite complaint's prayer for damages]; compare, e.g., *Flores v. Emerich & Fike* (E.D.Cal. 2006) 416 F. Supp.2d 885, 898 [holding public interest exception *in*applicable because "[p]laintiffs here seek monetary damages *for themselves only*;" italics added].) Succinctly stated, "the fact that a litigant may receive money from a

_____

4      Patenaude and Transworld contend *Tourgeman* is distinguishable from the case at bar because the complaint in *Tourgeman* did not include a prayer for damages; however, as discussed *post*, the fact that damages are among the types of relief sought in the complaint is irrelevant.

suit does not inherently bar . . . application of the public interest exemption"[5] (*Batis*, at p. 937), and the trial court's holding to the contrary was error.

## C.    The Conditions

The inquiry does not end with our conclusion that the action was brought solely in the public interest or on behalf of the general public.  We

---

[5]    Patenaude and Transworld cite two opinions— *Club Members* and *Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805 (*Sandlin*)—for the proposition that the public interest exception does not apply to matters in which a plaintiff has a personal stake.  But, so doing, they read too much into these opinions.

To illustrate, in *Club Members,* our Supreme Court considered a complaint in which the plaintiffs sought an injunction appointing one of them to the Sierra Club's board of directors.  (*Club Members, supra*, 45 Cal.4th at p. 314.)  The court said that, notwithstanding the fact that the litigation might benefit the public interest, the plaintiff's "personal stake in the litigation" rendered the public interest exception inapplicable.  (*Id*. at p. 318.) But the court made clear in its statement of the opinion's holding that the type of "personal stake" to which it was referring was one that, if vindicated, would yield relief different from that sought for other members of the public. (*Id*. at p. 312 ["Here, we hold [that] . . . [i]f any part of the complaint seeks relief to directly benefit the plaintiff, *by securing relief greater than or different from that sought on behalf of the general public,* [then] the section 425.17(b) exception does not apply;" italics added].)

In *Sandlin*, the court of appeal considered a writ petition in which a leader of a campaign to pass a public referendum petitioned the trial court to modify the ballot statements of three candidates for public office.  (*Sandlin, supra,* 50 Cal.App.5th at pp. 816, fn. 3, 823, fn. 5 and accompanying text.) The court noted that—"given the parties' history as political opponents" and adversaries in two lawsuits—"*it is not clear*" (italics added) whether the "writ petition . . . qualifies as an 'action brought *solely* in the public interest or on behalf of the general public' " (*id*., at p. 823)—but it concluded "we need not decide the matter."  (*Ibid*.; see also *Exline, supra,* 67 Cal.App.5th at p. 141 [*Sandlin* "court stated it did not need to determine whether the petitioner had met his burden of establishing the public interest exemption to the anti-SLAPP law"].)

Neither *Club Members* nor *Sandlin* involved a class action complaint.

11

still must consider whether each of the three enumerated conditions of the public interest exception have been met.

### 1. Condition Number One: No Greater or Different Relief

The first condition that must be met, in order for an action brought solely in the public interest or on behalf of the general public to be exempt from application of the anti-SLAPP law, is the requirement that the "plaintiff . . . not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member." (§ 425.17, subd. (b)(1).) Here, as in *Tourgeman*, "the trial court properly determined that [the plaintiff] did not seek relief greater than or different from the relief sought for the general public." (*Tourgeman, supra,* 222 Cal.App.4th at p. 1461.) Indeed, the relief Lindsay sought for herself was identical to that which she sought for the plaintiff class (see *ante*), and Patenaude and Transworld do not argue to the contrary.

### 2. Condition Number Two: Enforcing Important Right Affecting the Public Interest and Conferring a Significant Benefit

The second condition that must be met, in order for an action brought solely in the public interest or on behalf of the general public to be exempt from application of the anti-SLAPP law, is the requirement that the "action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons." (§ 425.17, subd. (b)(2).) Here, too, it is evident the trial court was correct in concluding this condition had been satisfied. In this regard, we find a passage from *Tourgeman* to be on all fours with the allegations of the complaint in the present case. In this case, as in *Tourgeman*:

> "[The] complaint alleged that respondents violated the FDCPA (15 U.S.C. § 1692 et seq.), and in so doing committed an unlawful, unfair, or fraudulent business practice under

12

Business and Professions Code section 17200. Specifically, [the plaintiff] claimed that respondents sent [the plaintiff] collection letters and filed an action against [the plaintiff] based on . . . false representation[s]. [The plaintiff] brought [a] UCL claim on behalf of [the plaintiff], 'members of the Class and members of the general public,' and sought an injunction.

"In enacting the FDCPA, Congress stated that it had found 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.' (15 U.S.C. § 1692(a).) Congress enacted the FDCPA in order 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' (15 U.S.C. § 1692(e).) The FDCPA attempts to achieve this purpose through provisions regulating the practices of debt collectors. (See 15 U.S.C. § 1692 et seq.) . . . In [the] lawsuit, [the plaintiff] seeks to enjoin respondents from continuing to violate a federal law enacted to protect the general public from abusive debt collection practices. We therefore conclude that [the] action, if successful, would enforce an important right affecting the public interest and would confer a significant benefit on the general public."

*Tourgeman, supra,* 222 Cal.App.4th at pp. 1462–1463. As with condition number one, Patenaude and Transworld do not dispute that this condition has been satisfied.

### 3. Condition Number Three: Necessity of Private Enforcement and Disproportionate Financial Burden

The third condition that must be met, in order for an action brought solely in the public interest or on behalf of the general public to be exempt from application of the anti-SLAPP law, is the requirement that "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b)(3).)

13

With regard to the private enforcement component of this condition, we note that " ' " "[C]ongress chose a "private attorney general" approach to assume enforcement of the FDCPA' " [citation]' " and that "[o]ur Legislature . . . has authorized private attorney general actions with respect to the enforcement of the UCL." (*Tourgeman, supra,* 222 Cal.App.4th at p. 1464.) Thus, private enforcement of such actions "is within the ambit of the public interest exemption" and "fully consistent both with Congress's intent in enacting [the] FDCPA and the Legislature's intent in enacting the UCL and section 425.17." (*Tourgeman,* at p. 1464.)

As for the disproportionate financial burden component of the public interest exception's condition number three, we note Lindsay "could reasonably have expected to incur significant litigation costs in attempting to prove that respondents violated the FDCPA and that injunctive relief was an appropriate remedy to deter future violations." (*Tourgeman, supra,* 222 Cal.App.4th at p. 1466.) We note further that she also "could reasonably have anticipated that [she] might be found liable for an adverse award of costs." (*Ibid*.) The prospect of such litigation expenses and cost awards, relative to Lindsay's personal stake in the action, warrants a conclusion that the public interest exception's disproportionate financial burden requirement had been met. (See *San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 628–629 [finding disproportionate financial burden where plaintiff "could reasonably expect to incur significant litigation costs and expenses in proving its allegations, as well as the possibility of an adverse cost award"]; accord, *Tourgeman,* at p. 1466.)

The sum and substance of Patenaude and Transworld's showing with regard to condition number three is a three-sentence footnote in their brief in which they state that, "[w]hen there is a public entity enforcing the same rights plaintiffs seek to vindicate, the private action is not necessary" and in

14

which they argue, on the basis of this statement, that "Lindsay's acknowledgment of and reliance on the regulatory enforcement actions brought by the CFPB and the New York Attorney General to redress alleged 'unlawful debt collection practices' demonstrates private enforcement in this case is neither necessary nor appropriate."

But they then proceed to *undercut* this argument by conceding elsewhere in the same brief that the public regulatory and enforcement actions to which Lindsay has referred in the complaint do not govern her loans or enforce the rights of the class of persons on whose behalf her complaint seeks redress. In the words of the respondents' brief:

> "The consent order settlements say nothing whatsoever about Lindsay's Loans. [T]he CFPB Consent Order is strictly limited in time and scope to [Transworld]'s . . . litigation activities during the . . . period . . . November 1, 2014, through April 25, 2016.[6] Similarly, the New York Assurance of Discontinuance . . . pertains only to New York consumers, . . . does not include any finding that [Transworld] does not possess defendants' Loan documentation[, and] does not apply outside of New York. Likewise, the Massachusetts Assurance of Discontinuance merely parrots or adopts the CFPB Consent Order[,] . . . does not find that [Transworld] does not possess defendants' Loan documentation or the schedule at issue here[, and] is specifically limited to activities between 2014 and 2016 in Massachusetts. The same is true for the Connecticut Consent Order."

In light of this concession, we cannot conclude that the public regulatory and enforcement actions to which Lindsay has referred in the complaint render

---

6    As noted *ante*, the class on whose behalf Lindsay seeks redress consists of persons as to whom Patenaude and Transworld engaged in specified conduct "in year [*sic*] prior to the commencement of this action." The action did not commence until December 8, 2020.

private enforcement unnecessary or that condition number three has not been met.

Because Lindsay's action satisfied each of the requirements of the public interest exception to the anti-SLAPP law, we conclude the action was exempt from application of the anti-SLAPP law.  Consequently, we need not consider Lindsay's contention that the trial court erred in holding that Patenaude and Transworld carried their burden of making a prima facie showing that the causes of action alleged in the complaint arose from protected activity.  Nor need we consider Lindsay's contention that the trial court erred in holding she had not carried *her* burden of showing she was likely to prevail on the merits.

### III.
### Disposition

The order is reversed.  Lindsay is entitled to costs on appeal.


KELETY, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.

16

Filed 12/11/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEKSIA LINDSAY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PATENAUDE & FELIX APC et al.,<br><br>    Defendants and Respondents. | D082750<br><br>(Super. Ct. No. CIVSB2134283)<br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed November 27, 2024, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

IRION, Acting P. J.

Copies to: All parties