Filed 3/20/26  Martello v. Merliss CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALICE MARTELLO, | B328695 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV02776) |
| v. | |
| JOSHUA MERLISS et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Crawford Law Group and Daniel Crawford for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

————————————

Defendants and respondents Joshua Merliss and Wilkie Cheong (collectively, defendants) filed separate motions under California Code of Civil Procedure section 425.16, commonly known as the anti-SLAPP statute, seeking to strike a complaint filed by plaintiff and appellant Alice Martello and her husband, John Martello.[1]  Martello dismissed the complaint, and the trial court issued two orders directing Martello to pay reduced awards of the attorney fees and costs of each defendant, after finding defendants would have prevailed on their motions.  Martello appeals both orders, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In January 2022, Alice and John Martello filed a complaint (the Complaint) against defendants Merliss and Cheong, alleging

---

[1] The acronym SLAPP stands for strategic lawsuit against public participation, and the statute "allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880–881.)  All further statutory references are to the Code of Civil Procedure.

[2] An appellant's opening brief must contain "a summary of the significant facts" relevant to the issues raised in the appeal, supported by a citation to the page number of the record where each fact appears.  (Cal. Rules of Court, rule 8.204(a)(2)(C).)  The factual summary in Martello's opening brief cites mostly to facts contained in her request for judicial notice.  Nonetheless, we have briefly summarized the relevant facts based on our independent review of the record.

that they had a superior security interest to $27,500 in funds on deposit with the Los Angeles Superior Court in connection with a civil case (hereinafter referred to as "Case BC589157") between their daughter, Dr. Jeannette Martello (Dr. Martello),[3] and Merliss.

At this point, we take a slight detour from summarizing the Complaint to set forth certain matters concerning Case BC589157 that are conceded by Martello, and that provide the necessary background for the appeal. In 2015, Dr. Martello sued Merliss in Case BC589157. Merliss is an attorney who represented Stella Madrid in a personal injury claim against her landlord, and Dr. Martello was Madrid's treating physician. Dr. Martello's lawsuit against Merliss claimed she was entitled to a portion of Madrid's personal injury settlement. Dr. Martello was declared a vexatious litigant in Case BC589157, and in order to proceed with her action, the court required her to post $27,500 in security. After Merliss prevailed in the lawsuit brought against him by Dr. Martello, the court ordered the release of the $27,500 to Merliss and his attorney, Cheong.

Returning to the current case, the complaint filed by Alice and John states claims for declaratory relief, injunctive relief, and unfair business practices under Business and Professions Code section 17200. Specifically, Alice and John's complaint states that Alice deposited $20,000 and John deposited $7,500 of

---

[3] Because Alice and John share the same last name with Dr. Jeannette Martello, we will sometimes refer to Alice and John by first name, with no disrespect intended. All further references to "Martello" are to plaintiff and appellant Alice Martello.

the funds being held as security by the Superior Court in Case BC589157. They further allege that each deposit was made pursuant to a security agreement, and that they perfected security interests in the funds through filings with the Secretary of State. The complaint alleges that both Merliss and Cheong claim an interest in the same money deposited in Case BC589157, but that neither Merliss nor Cheong has perfected a security interest in that money. Based on these allegations, and the additional allegation that Merliss and Cheong have a duty to uphold the law by acknowledging Alice and John's superior security interest, the cause of action for declaratory relief seeks a declaration that Alice and John are the rightful owners of the $27,500. In the cause of action for injunction, the complaint adds an allegation that Merliss and Cheong are attempting to gain release of the $27,500 held by the court, and that such conduct amounts to an unfair and unlawful business practice that must be enjoined. In the third cause of action, for unfair business practices, the complaint alleges that Merliss and Cheong's improper acts include attempting to obtain release of the $27,500 held in Case BC589157. The complaint alleges that Merliss and Cheong engaged in wrongdoing by taking these acts, including that they are practicing attorneys who violated their duties to uphold California law, their seeking the funds constituted an unfair and unlawful business practice, and their acts were "immoral, unethical, oppressive, [and] unconscionable" and have a tendency to deceive Alice and John.

Both defendants responded to the complaint by filing anti-SLAPP motions supported by requests for judicial notice; Merliss filed his on June 10, 2022, and Cheong filed his on August 23, 2022. Merliss contended that Alice and John's claims arose from

4

his protected conduct in seeking release to him the $27,500 in vexatious litigant funds deposited in connection with the lawsuit Dr. Martello filed against Merliss. Cheong similarly contended that Alice and John's claims against him arose from his protected conduct as the attorney representing Merliss against Dr. Martello and seeking release of the vexatious litigant deposit. Both Merliss and Cheong requested awards of attorney fees as part of their respective anti-SLAPP motions.

Neither Alice nor John filed any opposition to either anti-SLAPP motion or the requests for judicial notice. Instead, the case register reflects that after Merliss and Cheong filed their anti-SLAPP motions, Alice made a number of filings to dismiss the case in late 2022 and early 2023. These efforts included dismissing the case on her own behalf, and also as John's representative after his death. Defendants did not object to the dismissal, subject to the court ruling on their requests for attorney fees in connection with their anti-SLAPP motions. The orders on appeal note that both Alice and John had dismissed the complaint.

The trial court still engaged in the anti-SLAPP analysis before determining the entitlement to, and amount of, attorney fees to award Merliss and Cheong under section 425.16, subdivision (c)(1). Specifically, the court granted Merliss and Cheong's unopposed requests for judicial notice, and evaluated the complaint and judicially noticed materials, finding that the conduct forming the basis of Alice and John's claims arose from Merliss's and Cheong's written or oral statements or other conduct made before or in connection with a judicial proceeding, and therefore was activity protected under section 425.16. Further, the court found that Alice and John had not made any

5

effort to show that their claims had minimal merit. Accordingly, the court ruled that Merliss and Cheong would have prevailed on their anti-SLAPP motions had Alice and John not dismissed their complaint.

The court then went on to evaluate the amount of each defendant's request for fees, considering the billing rates and hours worked. The court awarded Merliss $10,200 in attorney fees for 17 hours of work at $600 per hour. That amount represented a reduction of four hours from the 21 hours Merliss had requested, based on the absence of any opposition filing and the research time needed for the issues involved, in light of counsel's experience. The court awarded Cheong $4,950 in attorney fees, deducting 2.5 hours of requested time anticipated for filing a reply brief. The court's orders awarding fees and costs were dated February 22, 2023.

Martello filed a notice of appeal on April 21, 2023. Her designation of the record on appeal, filed with the trial court on August 15, 2023, indicated she was electing to proceed with an appellant's appendix and a settled statement of the oral proceedings. The settled statement was filed on April 7, 2025 Corrected versions of appellant's appendix and appellant's opening brief were filed on September 16, 2025. Martello also filed a request for judicial notice, which we deny for the reasons discussed below.

On September 18, 2025, respondents Merliss and Cheong filed a letter notifying this court of their intent to waive their rights to file a respondent's brief.

## DISCUSSION

Martello challenges the anti-SLAPP fee awards entered against her in favor of Merliss and Cheong based on the argument that the trial court erroneously determined that defendants had shown her complaint arose from protected activity under section 425.16. The only reason she offers for why the conduct of Merliss and Cheong is not protected activity is that new facts, which surfaced in April 2024, well after the entry of the fee awards, show defendants' conduct in their dealings with Dr. Martello was illegal and therefore not protected under anti-SLAPP law. Martello also argues that the fee awards were unconscionable in amount and rewarded duplicative work. As explained below, we conclude that Martello has not met her burden to show reversible error.[4]

### A.    Martello Fails to Show the Trial Court Erred in Awarding Fees

#### 1.    *Authority to Award Fees*

"When a plaintiff dismisses his or her complaint while the defendant's special motion to strike is pending, courts agree they retain jurisdiction to award fees and costs. (See, e.g., *Coltrain v.*

---

[4] We consider the fee award here an appealable order, either as a final judgment (*Gassner v. Stasa* (2018) 30 Cal.App.5th 346, 354–355) or under the collateral order doctrine (*Sanchez v. Westlake Services, LLC* 73 Cal.App.5th 1100, 1107–1108), because it is a final, rather than interlocutory, determination.

*Shewalter* (1998) 66 Cal.App.4th 94, 107 (*Coltrain*); [*Moore v.*] *Liu* [1999] 69 Cal.App.4th [745,] 752; *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1456 (*Tourgeman*).) This is because permitting an eleventh-hour dismissal to eliminate financial liability would undermine the deterrent purpose of the anti-SLAPP statute. (See *Liu*, at pp. 750–751.)" (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 732–733 (*Ross*).) "The framework for awarding fees in the context of a voluntary dismissal, however, is unsettled. (*Ross* [], *supra*, 96 Cal.App.5th at p. 733.) Some courts require a lower court to determine whether the defendant is the prevailing party due to achieving its litigation objectives through the dismissal. (E.g., *Coltrain*[, *supra*,] at p. 107). Other courts require the lower court to determine whether the defendant's anti-SLAPP motion would have been granted had the plaintiff not dismissed its case; if the motion would have been granted, the defendant is the prevailing party. (E.g., *Tourgeman*[, *supra*,] at pp. 1457–1458)." (*Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1140, fn. 9.)

The trial court here followed the *Tourgeman* approach, first explaining that defendants would have prevailed on their anti-SLAPP motion, and then proceeding to consider attorney fees. We affirm the trial court's order, for the reasons discussed below.[5]

---

[5] Martello does not address the *Coltrain* framework. However, even if she were to do so, we would nevertheless affirm. "The court in *Coltrain* held the award of fees is discretionary, dependent upon whether the movant 'realized its objectives in the litigation.' [Citation.] 'Since the defendant's goal is to make

8

2.    *Merits of the Anti-SLAPP Motions*

       a.    Legal Principles

Courts apply a two-step analysis to evaluate anti-SLAPP motions.  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011 (*Bonni*).)  In the first step, the court determines whether the plaintiff's claims arise from protected activity.  (*Id.* at p. 1009.)  "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity.  [Citation.]"  (*Id.* at p. 1009; *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1544.)  A defendant must make a threshold showing that the challenged act was taken in

---

the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant.' [Citation.]  The fact of the dismissal gives rise to a presumption that the defendants prevailed.  [Citation.]  However, the plaintiff may show 'it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits.' [Citation.]  The *Coltrain* approach does not require an analysis of the merits of the motion to strike under the anti-SLAPP statute."  (*Ross, supra*, 96 Cal.App.5th at p. 733.)  Martello makes no effort even to suggest, much less show, that she achieved any goal through the dismissed litigation or dismissed the case for any reason other than its lack of merit.

furtherance of the constitutional rights of petition or free speech. (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1216–1217 (*D.C.*).)

Courts generally presume the validity of the claimed constitutional protection in the first step of the analysis. But narrow exceptions have been recognized. Conduct that is illegal as a matter of law is not protected by section 425.16. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 316 (*Flatley*); *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424.) To resolve the issue of illegality at the first step though, the defendant must concede, or the evidence conclusively show, that the challenged conduct is illegal as a matter of law. (*Ibid.*)

If the complaint seeks relief based on allegations arising from protected activity, the court turns to the second step of the analysis. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) In the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Ibid.*) "[A] plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' [Citations.]" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)

On appeal, our review of the trial court's decision that the anti-SLAPP motion was meritorious is de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 ["We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity."]; *Ross, supra*, 96 Cal.App.5th at p. 734.)

### b. Protected Conduct

As is readily apparent from the complaint, judicially noticed materials, and Martello's concessions, the acts from which Martello's claims arise are Merliss and Cheong's assertion in Case BC589157 that the vexatious litigation deposit should be released to them. Specifically, Martello bases her claims on the allegation that, in Case BC589157, Merliss and Cheong wrongfully claimed an interest in the $27,500 on deposit, attempted to obtain release of that money, did not concede in court that Martello had a superior right to those funds, and continued to attempt to gain release of that money from the court, thereby breaching their duties as attorneys and acting immorally, unethically, and oppressively. The basis for all Martello's claims is protected activity under the anti-SLAPP statute, because it necessarily involves written or oral statements made before a judicial proceeding. (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [the filing, funding, and prosecution of a civil action, including acts taken by attorneys representing clients in litigation, is protected under section 425.16]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 670–672 [opposing federal agency efforts to obtain restraining orders involves making written or oral statements in a judicial proceeding]; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [filing of counterclaims in court is protected activity]; *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.*

11

(2020) 56 Cal.App.5th 413, 426 [filing of fourth mechanics lien is protected activity in anticipation of litigation].)[6]

Moreover, Martello effectively concedes that the conduct underlying her pleaded claims was the litigation activity in Case BC589157 by offering no contrary factual or legal interpretation of her complaint.[7] Instead, she argues that matters outside of the record in this case can be used to establish that Merliss and Cheong were acting illegally in their relationship with Dr. Martello and in the positions they took in

---

[6] *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 30 (*Drell*) does not undermine the first prong analysis here. In *Drell*, a personal injury attorney filed a lawsuit solely seeking declaratory relief on status of a lien placed by his client's former attorneys on the client's settlement check. In determining that the declaratory relief claim was not subject to a motion to strike under the anti-SLAPP statute, even though it related to potential litigation, the court explained, "The complaint here did not allege defendants engaged in wrongdoing by asserting their lien. Rather, the complaint asked the court to declare the parties' respective rights to attorney fees. The complaint necessarily refers to defendants' lien, since their demand letter is key evidence of plaintiff's need to obtain a declaration of rights, but the complaint does not seek to prevent defendants from exercising their right to assert their lien." (Fn. omitted.) In contrast here, Martello's complaint is based on alleged wrongful acts by Cheong and Merliss, and it does seek to prevent Cheong and Merliss from exercising their right to argue to the trial court in Case BC589157 that the $27,500 vexatious litigant deposit should be released to them.

[7] We decide this case based on the complaint that Martello actually filed, and continues to defend, not based on a hypothetical action that Martello decided not to pursue in Case BC589157.

the Case BC589157 litigation. Martello contends this illegality renders Merliss and Cheong's activity in BC589157 unprotected by the anti-SLAPP statute. We discuss, and reject, Martello's arguments below.

         c.        Alleged Illegality of Merliss's and Cheong's Conduct

Martello argues her appeal is based on "newly discovered facts that are material to a de novo review and reversal of [Merliss and Cheong's] anti-SLAPP Motions to Strike." (Emphasis omitted.) She contends that because Merliss and Cheong's speech, conduct, and petitioning activity were illegal, they are not protected activity under the anti-SLAPP statute. Rather than relying on documents from the instant case contained in the record on appeal, Martello's opening brief cites almost exclusively to evidence from a different case that she claims to have discovered over a year after the rulings at issue in this case, and exclusively contained in her request for judicial notice. The request seeks judicial notice of 19 exhibits, totaling over 500 pages, naming and describing the documents, but offering no coherent explanation or legal authority for why this court should take judicial notice of the proffered documents.

We decline to take judicial notice of documents that were not presented to, or considered by, the trial court. "Although a reviewing court may take judicial notice of matters not before the trial court, including records of another court (Evid. Code, §§ 459, subd. (a), 452, subd. (d)), the reviewing court need not give effect to such evidence." (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1; see also Eisenberg, et al., Cal. Practice

13

Guide (The Rutter Group 2025) Civil Appeals and Writs, ¶¶ 8:172–174, p. 160.)  Courts use judicial notice to recognize and accept a fact " 'relevant to an issue in the action without requiring formal proof of the matter.' " (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113 [ordinarily only matters "reasonably beyond dispute" are subject to judicial notice].)  Our authority to take judicial notice "is subject to the limitation that the proffered evidence be relevant.  [Citation.]  It is not sufficient that the evidence be relevant to an argument made by its proponent.  The evidence must be relevant to the disposition of the matter.  [Citations.]  Further, we 'generally do not take judicial notice of evidence not presented to the trial court' and will do so only in 'exceptional circumstances.' [Citation.]" (*Ross, supra*, 96 Cal.App.5th at pp. 745–746; see also *Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1306–1310.)

"Appellate courts do not determine the facts themselves.  [Citation.]  An appellate court ' "ha[s] no power to judge [] the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." ' [Citation.]  ' "Resolution of conflicts and inconsistencies in the testimony is the *exclusive province* of the trier of fact." ' [Citation, italics added.]  ' " 'The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony.' " ' [Citation.]" (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 472.)

14

We therefore deny Martello's request for judicial notice, and reject her argument that we, in our role as a reviewing court, should rely on new facts alleged in a different case to reverse the trial court's determination in this case that her claims arose from protected activity under the anti-SLAPP law.

Further, even if we were to grant Martello's request for judicial notice, the documents proffered are inadequate to defeat the showing by Merliss and Cheong that the claims at issue here are based on protected activity. Martello admits that the proffered evidence is nothing more than allegations pleaded in a *qui tam* complaint or matters currently "being investigated." *Flatley* requires much more to show that conduct is not protected activity based on illegality; either defendants must concede the point or evidence must conclusively demonstrate it. (*Flatley, supra*, 39 Cal.4th at p. 316.) Martello does not even purport to meet these tests.

### d. Anti-SLAPP Second Prong: Minimal Merit

Both before the trial court and on appeal, Martello makes no attempt to argue that her claims meet the minimal merit prong of section 425.16. Accordingly, the trial court's finding that Merliss and Cheong would have prevailed on their anti-SLAPP motions must be affirmed.

## B. The Amount of the Fee Award was Not an Abuse of Discretion

Turning to Martello's legal argument that the fee award was unreasonably excessive because Cheong's anti-SLAPP

motion was nearly identical to Merliss's motion, we find no abuse of discretion.

"A trial court's determination of the amount of attorney fees to award is reviewed for an abuse of discretion.  [Citation.] ' " '[A]n experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances.' [Citation.]  'The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' " [Citation.]' [Citation.]" (*Gutierrez v. Chopard USA Ltd.* (2022) 82 Cal.App.5th 383, 392–393.)

Martello argues that Merliss and Cheong artificially inflated their requests for attorney fees, because they "worked together to formulate their plan in filing duplicative anti-SLAPP Motions to Strike sequentially as opposed to joining in a single Motion to Strike.", and because the two requests were largely duplicative.  Martello's argument ignores the fact on April 25, 2022, three months after filing the complaint, she sought an extension of time to serve the complaint on defendants.  The complaint was served on Merliss on May 19, 2022, whereas Cheong was not served until August 8, 2022.  Those service dates clarify why Merliss filed his motion to strike on June 10, 2022, while Cheong's motion was not filed until August 23, 2022.

In addition, the orders make it clear that the trial court not only carefully considered the fee requests, but also reduced fees it determined to be unwarranted.  The court found the requested

16

rate of $600 per hour to be reasonable for both attorneys, but deducted four hours from the 21 hours requested by Merliss, explaining that it found the amount of research time excessive. Cheong's request was not duplicative of Merliss's request, as it only requested 10.75 hours, and transparently noted that three hours were spent editing and rewriting Merliss's motion to strike. The trial court also deducted 2.5 hours from Cheong's request, explaining that because no opposition had been filed, there was no basis for awarding fees for the anticipated time spent on a reply brief. We conclude that the court acted well within its discretion in awarding fees and costs to Merliss and Cheong.

## DISPOSITION

The February 22, 2023 orders are affirmed. In the interests of justice, each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

I CONCUR:

KIM (D.), J.

17

Alice Martello v. Joshua Merliss et al.
B328695


BAKER, Acting P. J., Dissenting



The majority affirms a five-figure anti-SLAPP attorney fees award entered against plaintiff and appellant Alice Martello, who gave her daughter Jeannette Martello $27,500 to use as the security deposit she (Jeannette) needed to file a lawsuit because she had previously been deemed a vexatious litigant. The purpose of Alice's lawsuit was to obtain a court ruling that she had a superior security interest in the funds on deposit with the court. Alice's theory, alleged in the complaint she filed as a self-represented litigant, was that she was entitled to return of the money because she filed a Uniform Commercial Code Financing Statement with the Secretary of State asserting her interest in the funds while defendants and respondents Joshua Merliss and Wilkie Cheong, who believed they were owed that money by virtue of prevailing in Jeannette's lawsuit, had filed no such statement. When defendants responded to Alice's complaint by filing an anti-SLAPP motion, however, Alice voluntarily dismissed her action. The trial court nonetheless ordered Alice to pay over $10,000 in attorney fees because it found defendants' anti-SLAPP motion would have been successful had Alice not voluntarily dismissed her action. I would reverse the trial court's fees order because the anti-SLAPP motion would not have

succeeded—Alice's suit did not arise from anti-SLAPP protected activity.

Alice's complaint advanced three causes of action, all of which were aimed at obtaining return of the $27,500 she loaned her daughter. The first, for declaratory relief, alleged an "actual controversy has arisen between Plaintiffs and Defendants as to their respective rights to the security . . . of $27,500 plus interest that is on deposit with the Revenue Management Division of the Stanley Mosk Courthouse. Resolution of the parties' respective rights to the $27,500 security interest by the declaration of the Court is necessary, as there exists no adequate remedy at law. Plaintiffs allege and contend[ ] that Defendants have the duty of upholding California law which mandates that a security interest perfected with the California Secretary of State takes priority over a non-perfected interest in the same funds or property. [¶] Plaintiffs therefore[ ] seek a declaratory judgment regarding the fact that Plaintiffs have a superior right to the $27,500 in funds on deposit . . . ." The second, for injunctive relief, alleged "that, unless enjoined by order of [the trial court], Defendants will continue to attempt to release the $27,500 security plus interest unto them even though Plaintiffs have a superior right to these funds." The third, for violation of the Unfair Competition Law (UCL), complained that defendants unlawfully and unfairly were "attempting to release the $27,500 in funds and interest" and sought "restitution of all the monies paid to Defendants for retaining be[ne]fits that were due and owing to Plaintiffs (with interest thereon), to disgorgement of all Defendants' profits arising out of their unlawful conduct (with interest thereon), and to be paid benefits due to Plaintiffs under the $27,500 security plus interest on deposit with the . . . Los Angeles Superior Court."

2

Code of Civil Procedure section 425.16 (the anti-SLAPP statute) defines four categories of protected activity, and the only one at issue is the one found in subdivision (e)(1): statements made before a judicial proceeding. It is of course true that Alice's lawsuit complains that defendants were seeking in the Jeannette litigation to recover the $27,500 that she believed was subject to her superior security interest. But that does not mean Alice's suit arose from statements made before a judicial proceeding: "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim" and "'[t]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063.) Here, Alice's claims did not in this sense "arise from" defendants' filings in the litigation with Jeannette; that was merely the necessary mechanism for resolving the dispute from which Alice's suit did arise, namely, the competing claims to the $27,500. (See, e.g., *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 30 [explaining "not all litigation-related conduct is protected activity" and holding a complaint that asked the court to declare the parties' respective rights to attorney fees did not arise from anti-SLAPP protected activity]; see also *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 ["courts are to 'consider *the elements of the challenged claim* and what actions by the defendant supply those elements and consequently form the basis for liability'"], italics added.)

The fundamental error in the majority's contrary conclusion is obvious when considering alternative procedural means Alice could have pursued to achieve the same objective.

3

Had Alice, for instance, filed a complaint in intervention in the litigation between Jeannette and defendants to assert what she believed to be her superior claim to the $27,500, no one (I venture to say not even the majority) would contend that complaint in intervention is a SLAPP. Yet that is what today's opinion for the court effectively and incorrectly holds.[1] I cannot join that holding. I would instead reverse with directions to vacate the attorney fees award.

BAKER, Acting P. J.

---

[1] None of the causes of action in Alice's complaint seeks damages. Even the UCL cause of action seeks only restitution and "disgorgement" of the $27,500 plus interest. (That is, of course, consistent with well-established law that "damages" are not available for a UCL violation. (See, e.g., *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 ["We have stated that under the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution'"].)) The majority accordingly does not dispute that Alice's complaint, though it may lack some of the precision of an attorney-drafted pleading, seeks to adjudicate "the rightful owners of the $27,500."